## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: July 12, 2017

Mr. Earl Jerome Melson
Gentry, Tipton & McLemore
900 S. Gay Street
Suite 2300
Knoxville, TN 37901

Mr. Richard M. Brooks
Law Office
P.O. Box 255
Carthage, TN 37030-0000

>   Re:  Case No. 17-5157, *Brandon Carden v. City of Knoxville, TN, et al*
>        Originating Case No. : 3:15-cv-00314

Dear Counsel:

   The Court issued the enclosed Opinion today in this case.

>                              Sincerely yours,
>
>                              s/Renee M. Jefferies
>                              Case Manager
>                              Direct Dial No. 513-564-7021

cc:  Ms. Debra Poplin

Enclosure

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0404n.06

No. 17-5157

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| BRANDON T. CARDEN, Individually and as next of kin of the Decedent, Ronald E. Carden,  )<br><br>Plaintiff-Appellee,  )<br><br>v.  )<br><br>CITY OF KNOXVILLE, TENNESSEE,  )<br><br>Defendant,  )<br><br>and  )<br><br>DAVID GERLACH, Individually,  )<br><br>Defendant-Appellant.  ) | **FILED**<br>Jul 12, 2017<br>DEBORAH S. HUNT, Clerk<br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |

BEFORE:   GUY, ROGERS, and KETHLEDGE, Circuit Judges.

ROGERS, Circuit Judge.  Officer David Gerlach brings this interlocutory appeal from the district court's denial of his motion for summary judgment on the ground of qualified immunity. The next of kin of the decedent Ronald Carden filed this § 1983 action alleging that Gerlach had used excessive force when he shot and killed Carden after a scuffle alongside the interstate. Because it was clearly established at the time of the shooting that the police may not fire on a fleeing suspect who does not pose a threat of serious physical harm, the denial of qualified immunity was proper.

No. 17-5157, *Carden v. City of Knoxville, Tenn., et al.*

This suit arose out of the nighttime encounter between Officer Gerlach and Carden, as Gerlach was out on patrol and Carden and a companion were stopped on the side of the interstate, tending to a flat tire. Gerlach, spotting their stalled car, pulled over to ask if they needed assistance. They declined, and Gerlach, once back in his cruiser and backing out to leave, decided to run the license plate. When the plate and the vehicle registration failed to return a match, Gerlach pulled back in behind the car to investigate, leading to their fatal encounter:

> As [Gerlach] exited his vehicle, [Carden] walked over to his car's driver-side door and leaned down inside the vehicle. [Gerlach], fearing that [Carden] was reaching for a weapon, asked [Carden] to walk toward him. [Carden] did not appear to have a weapon in his hands as he rose from the car. He approached [Gerlach], and [Gerlach] placed a hand on the [Gerlach's] chest. [Gerlach] then called in the traffic stop, holstered his radio, and placed a hand on [Carden's] sleeve. [Carden] proceeded to swing two punches at [Gerlach's] mid-torso and run in the opposite direction of [the interstate]. [Gerlach] chased after [Carden] and ordered that he stop and get down on the ground. [Carden] ignored these commands, and [Gerlach] tackled him to the ground. A struggle ensued.
> 
> [Carden] forcefully resisted [Gerlach's] attempts to control him, and the two men exchanged punches. Throughout the struggle, [Carden] repeatedly grabbed at [Gerlach's] holstered firearm, but he did not gain possession of the gun at any time. After several seconds of active struggle, [Gerlach] proceeded to deploy his Taser into [Carden's] abdomen. This failed to neutralize [Carden], so [Gerlach] applied the Taser to [Carden's] upper torso in "drive-stun" mode. [Carden] continued to resist, and [Gerlach] began to use the Taser on the back of [Carden's] neck. At this point, [Gerlach] also became tangled in the Taser wires and was shocked as a result.
> 
> [Carden] ultimately positioned himself on top of [Gerlach], straddling [Gerlach's] body. He held [Gerlach] away from him by the upper front of [Gerlach's] shirt. He was not attempting to grab [Gerlach's] weapon at this time. [Carden] then let go of [Gerlach], stood up, and turned away from him. [Carden] started to flee, and made it about one step, when [Gerlach] began shooting at [Carden]. [Gerlach] fired approximately two to three shots at [Carden] while [Gerlach] was still lying on the ground. He then stood up and fired three more shots down at [Carden]. Approximately thirty-five seconds elapsed from the moment [Carden] struck [Gerlach] to the moment [Gerlach] fired his final round.

No. 17-5157, *Carden v. City of Knoxville, Tenn., et al.*

An autopsy performed later that morning revealed that Carden had died from multiple gunshot wounds—six in all, and all from the back.

Carden's son later brought this suit against the City of Knoxville and Gerlach in his individual and official capacities, asserting, among other things, a claim of excessive force under the Fourth Amendment, pursuant to 42 U.S.C. § 1983. Gerlach moved for summary judgment on the ground of qualified immunity, which plaintiff opposed, arguing that a reasonable jury could find that in using deadly force Gerlach had acted unreasonably, violating Carden's clearly established right to be free of excessive force under the Fourth Amendment.

The district court agreed with plaintiff, and denied Gerlach immunity. Even though the court determined that some level of force was objectively reasonable under the circumstances, it concluded that the use of deadly force was not. As the court explained its view of the facts:

> [Carden] terminated his struggle with defendant and had begun to flee at the time [Gerlach] shot him. [Carden] was unarmed, and a reasonable jury could find that there was no reason for [Gerlach] to believe that he was armed. While [Gerlach] initially asked [Carden] to walk toward him because he feared that [Carden] was reaching for a weapon when he leaned down into his vehicle, video footage of this conduct by [Carden] demonstrates that [Carden] did not grab a weapon from the car. Based on [Gerlach's] positioning at this moment, a factfinder could determine that [Gerlach] had no reasonable basis for believing that [Carden] actually picked up a weapon.

Viewing the facts in the light most favorable to plaintiff, the court thus found that "a reasonable jury could conclude [Carden] was not a threat to anyone when he turned and began to flee." Accordingly, there was enough evidence "draw[ing] into question whether defendant's use of deadly force was objectively unreasonable under the circumstances" to allow a "reasonable jury [to] conclude that the defendant violated [Carden's] constitutional rights under the Fourth Amendment."

The district court further held that those rights were clearly established as of the day of their fatal encounter. Pointing to a number of this court's precedents, the district court concluded that the law "clearly established that when an individual is obviously not armed and is attempting to flee at the time he was shot, the use of deadly force is typically unreasonable under the circumstances." Having already determined that a reasonable jury could find that Gerlach had no objective reason for believing that Carden posed a serious threat while fleeing unarmed, the court reasoned that Gerlach's use of deadly force in that case violated Carden's clearly established rights under the Fourth Amendment.

The court accordingly denied Gerlach qualified immunity as to plaintiff's excessive force claim, and he now appeals from that denial on an interlocutory basis.

As a preliminary matter, although Gerlach appears to challenge a number of critical factual inferences drawn by the district court, we nonetheless have jurisdiction over this appeal. It is true that under *Johnson v. Jones*, 515 U.S. 304 (1995), our jurisdiction over an interlocutory appeal like Gerlach's is limited. We may review purely legal questions, such as whether a constitutional right was clearly established or whether a defendant violated some such right. *See Thompson v. City of Lebanon*, 831 F.3d 366, 370 (6th Cir. 2016). But *Johnson* squarely forecloses our consideration of sufficiency questions, concerning the facts that may or may not be provable at trial, *id.*, as well as any factual inferences drawn by the district court, *Romo v. Largen*, 723 F.3d 670, 673-74 (6th Cir. 2013). We are therefore bound to accept the district court's finding here that a reasonable jury could conclude that Carden no longer presented a threat once he had turned and begun to flee, and that Gerlach had no objective reason to believe otherwise. To the extent that Gerlach's arguments call any of those facts or inferences into question, such as in his argument that Carden posed a possible deadly threat at the time of the

shooting, we must disregard them. *See Kirby v. Duva*, 530 F.3d 475, 481 (6th Cir. 2008). However, we still retain jurisdiction to resolve the legal question presented in Gerlach's appeal. *Thompson*, 831 F.3d at 370-71.

That question, as both sides agree, is whether Gerlach violated Carden's right to be free of excessive force when Gerlach fired on him from behind while he fled, unarmed, from an arrest for possessing a suspected stolen vehicle or for assaulting a police officer. Gerlach contends that the case law at the time of the encounter did not clearly establish that his use of deadly force would have been unjustified, even under the circumstances found by the district court. About that, however, he is mistaken.

As the district court explained, the law at the time of the encounter clearly established that deadly force would be excessive if used against an unarmed, fleeing felon who the officer lacked probable cause to believe posed a threat of serious physical harm. That much was made clear in *Bouggess v. Mattingly*, 482 F.3d 886 (6th Cir. 2007), decided nearly a decade before the fatal encounter in this case, where we upheld the denial of qualified immunity against an officer after he shot and killed a fleeing felon who had violently resisted arrest. *Id.* at 892. There, as in this case, the decedent was suspected of a non-violent felony: there, dealing crack cocaine, *id.* at 891; here, stealing a car. Like Carden, the decedent in that case after aggressively resisting arrest had turned and begun to flee, with no weapon drawn, when he was shot multiple times in the back by the officer. *Id.* at 888-89. We held that those circumstances, though justifying the use of *some* force, did "not justify *deadly* force, especially when the struggle ha[d] concluded and the suspect [was] in flight." *Id.* at 891 (citing *Tennessee v. Garner*, 471 U.S. 1, 10-12 (1985)). Indeed, later cases have only made clearer that the police may not fire on a non-dangerous suspect fleeing from arrest. *Kirby*, 530 F.3d at 483 (citing *Bouggess*, 482 F.3d at 894-95); *see*

*also Foster v. Patrick*, 806 F.3d 883, 887 (6th Cir. 2015) (citing *Bouggess*, 492 F.3d at 889-91). That is exactly what the district court determined that a jury could find in this case, and the cases on the books at the time clearly indicated its unconstitutionality.

Gerlach tries to resist this conclusion by distinguishing *Bouggess* and its progeny on the ground that Carden grabbed at Gerlach's holstered sidearm several times during their struggle, giving Gerlach probable cause to fear for his safety, even in the seconds after Carden had turned to flee. But that distinction cannot make the difference that Gerlach asserts. For "[t]his court assesses the reasonableness of a seizure in distinct stages," leaving the reasonableness of "the use of deadly force at a particular moment" to "depend[] primarily on objective assessment of the danger a suspect poses at that moment." *Bouggess*, 482 F.3d at 889. Thus, even if Gerlach had probable cause to fear for his safety *during* his struggle with Carden, it could well be that he lacked the same cause *after* the struggle had ended and Carden, still unarmed, had turned and begun to flee. Here the district court found that Gerlach could not reasonably have believed he was in danger once Carden had turned to run, and we may not second-guess that finding on interlocutory review, *see Thompson*, 831 F.3d at 370. *Bouggess* and its progeny are therefore clearly on point, and they just as clearly establish that the circumstances found by the district court did not justify the use of deadly force against Carden.

The cases relied on by Gerlach to question this conclusion are inapposite. In *Mullins v. Cyranek*, 805 F.3d 760 (6th Cir. 2015), we upheld qualified immunity for an officer who had fired on an unarmed suspect violently resisting arrest, but only because the suspect had already pulled a gun on the officer, *id.* at 763-64, and because the officer could reasonably have believed that the suspect was still holding the gun, and was thus a threat, despite having thrown the

No. 17-5157, *Carden v. City of Knoxville, Tenn., et al.*

weapon away some seconds before the officer fired, *id.* at 767-78.[1] Much the same was true in *Untalan v. City of Lorain*, 430 F.3d 312 (6th Cir. 2005), where the decedent had stabbed an officer and appeared to the other shooting officer to be readying himself for another attack, *id.* at 313-14, as well as in *Bell v. Cumberland Cty.*, 665 F. App'x 421 (6th Cir. 2016), where the officer fired the fatal shots while the decedent, still sitting on the officer's chest, was reaching for a cast iron skillet to continue bludgeoning him, *see id.* at 423. Nor do the out-of-circuit cases cited by Gerlach lend his argument persuasive support, for in each case the police fired only after the decedent had turned and begun advancing *toward* the firing officer, *see Orr v. Copeland*, 844 F.3d 484, 488 (5th Cir. 2016); *Williams v. Deal*, 659 F. App'x 580, 602 (11th Cir. 2016).

The judgment of the district court denying qualified immunity is affirmed.

---

[1] Moreover, when the officer in *Mullins* fired on the suspect the officer still "was faced with a rapidly escalating situation," posing "a severe threat to himself and the public." 805 F.3d at 767. Here, by contrast, the district court concluded that a reasonable jury could find that Gerlach faced no such danger: Carden had turned to flee, and at that point he no longer posed a threat to Gerlach or anybody else.