UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| BRANDON T. CARDEN, individually<br>and as next of kin of the Decedent,<br>Ronald E. Carden,<br><br>   Plaintiff,<br><br>v.<br><br>DAVID GERLACH, individually and<br>in his official capacity as an officer of the<br>Knoxville City Police Department,<br><br>   Defendant. | No.: 3:15-CV-314-TAV-HBG |

## **MEMORANDUM OPINION**

This civil matter is before the Court on defendant's motion for a directed verdict on liability, damages, and qualified immunity. The motion was argued by both plaintiff and defendant at trial on April 23, 2014. On April 24, 2014, the Court orally granted defendant's motion and stated that a written order would follow [Doc. 112]. The Court has separately granted defendant's renewed supplemental motion for summary judgment on the question of qualified immunity, so the Court will only address the issues of liability and damages in this opinion.

**I. Standard of Review**

Pursuant to Federal Rule of Civil Procedure 50(a), the Court should grant a motion for directed verdict when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [plaintiff] on that issue." The Court looks to whether "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with

respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court looks at the evidence in "a light most favorable to the nonmoving party" to determine whether "reasonable people could come to but one conclusion from the evidence." *Zamlen v. City of Cleveland,* 906 F.2d 209, 214 (6th Cir. 1990).

The purpose of a directed verdict motion is to enable the Court "to determine whether there is any question of fact to be submitted to the jury and whether any verdict in favor of plaintiff would be erroneous as a matter of law." *Jones v. Associated Univer., Inc.,* 870 F. Supp. 1180, 1192 (E.D.N.Y. 1994). While the role of the jury is important in our judicial system, it is also limited—the jury serves as the finder of facts. The Court's role, however, is to settle issues of law. When there are no facts for the jury to assess, the Court must, as a matter of law, direct the verdict in favor of the moving party.

## II. Compensatory and Punitive Damages

The Court will first turn to the question of compensatory and punitive damages. For the jury to consider damages, plaintiff must establish "with reasonable certainty" that such damages exist. *Stone v. Erhart*, 1:14-cv-272, 2015 WL 5315719, at *2 (W.D. Mich. Sept. 11, 2015). Where plaintiff provides "no proof of actual damages, the plaintiff will be limited to 'recovering nominal damages not to exceed one dollar.'" *Id.* Speculative damages are not recoverable because the factfinder must be able to draw reasonable inferences and make a reasonable assessment of damages. In other words, the "abstract value of a constitutional right may not form the basis for § 1983 damages." *Memphis Cmty*

*School Dist. v. Stachura*, 477 U.S. 299, 308 (1986). Thus, for compensatory damages, plaintiff must point to actual injury. *Id.*

In this case, plaintiff has only been able to point to the fact that the decedent's life was cut short and that he "deserved to live," arguing that this fact alone is enough evidence to reach the jury on the question of damages. However, the claim that the decedent lost his life, absent any evidence of pain or suffering, lost income or wages, or other evidence tending to show the pecuniary value of the decedant's life, is insufficient to reach the jury. Plaintiff has not provided any evidence of damages, including pain and suffering. In fact, the medical examiner testified that there were no wounds on the decedent's body consistent with the theory that the decedent suffered or experienced pain while the taser was being deployed. Certainly, a loss of life, however accomplished, is a significant and impactful event; however, without any evidence of actual injury, as a matter of law, plaintiff cannot recover compensatory damages. Thus, with respect to a federal § 1983 claim, plaintiff has failed to meet his burden in showing actual injury such that plaintiff is entitled to compensatory damages.

For punitive damages, the Supreme Court has held that the plaintiff must show that the defendant acted "maliciously, or wantonly, or oppressively." *Smith v. Wade*, 461 U.S. 30, 49 (1983). In Tennessee, a court may "award punitive damages only if it finds a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). Here, plaintiff has failed to provide any evidence whatsoever that defendant's conduct satisfied any of

3

these standards. Thus, plaintiff has failed to meet his burden as to the claim for punitive damages as well.

## III.     Excessive Force Liability

In evaluating a claim of excessive force, courts utilize the Fourth Amendment's "objective reasonableness" standard, whereby a court analyzes whether "the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397, 399 (1989). Reasonableness is determined by "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (internal quotation marks and citations omitted).

Three non-exclusive factors should be examined in making this determination: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight ("the Graham factors"). *Graham*, 490 U.S. at 396. These factors are evaluated from the perspective of a reasonable officer on the scene, "rather than with the 20/20 vision of hindsight." *Id*. Additionally, these three factors are not an exhaustive list, and a court's ultimate inquiry should be "whether the totality of the circumstances justifies a particular sort of seizure." *Id*. The circumstances should be evaluated at the moment force is employed. See *Bouggess v. Mattingly*, 482 F.3d 886, 889 (6th Cir. 2007) (stating that the

reasonableness of the use of force at a particular time is based on an "objective assessment of the danger a suspect poses at that moment").

Courts should account for "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397. "[T]he fact that a situation unfolds relatively quickly," however, "does not, by itself, permit [officers] to use deadly force." *Estate of Kirby v. Duva*, 530 F.3d 475, 483 (6th Cir. 2008) (quoting *Smith v. Cupp*, 430 F.3d 766, 775 (6th Cir. 2005)).

"Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Garner*, 471 U.S. at 11; *see Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005) (asserting that deadly force "may be used only if the officer has probable cause to believe that the suspect poses a threat of severe physical harm"). "Given the extreme intrusion caused by use of deadly force," however, "the countervailing governmental interests must be weighty indeed." *Rivers v. Bowers*, No. 2:06-CV-712, 2008 WL 2079406, at *6 (S.D. Ohio July 8, 2010). Thus, deadly force, in particular, may only be used by officers "in rare instances." *Whitlow v. City of Louisville*, 39 F. App'x 297, 302–03 (6th Cir. 2002). "The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable." *Garner*, 471 U.S. at 11. "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Id.* However, when "the officer has probable cause to believe that the suspect poses a threat of serious

physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Id.*

Even if plaintiff set forth sufficient proof of damages, which he has not, he has failed to provide evidence that would be sufficient to establish that defendant used excessive force. As the Court discussed previously [*see* Doc. 27 pp. 15–16], the Graham factors weigh in favor of defendant using some level of force. Defendant suspected that the decedent was changing the tire on a stolen vehicle. When defendant approached the decedent, the parties agree that the decedent attacked defendant and was attempting to reach for defendant's gun. Furthermore, the decedent actively resisted arrest and tried to evade arrest. All these facts weigh in favor of defendant using some degree of force.

Defendant argued, more specifically, that he was entitled to use deadly force because the decedent posed a threat of serious bodily harm when he punched defendant and struggled to gain control of defendant's weapon. Defendant argued that the decedent repeatedly attempted to gain control of defendant's weapon and that defendant first attempted to speak with the decedent, then attempted to deploy his taser before finally discharging his weapon. Plaintiff has provided no contrary evidence or any evidence that would tend to show that the decedent was fleeing at the time defendant discharged his weapon. Plaintiff's lone defense is that defendant's testimony is self-serving and that the jury needed to determine the facts in this case. However, the facts necessary for the Court to reach a decision on this issue were stipulated to by the parties [Doc. 103].

After considering the evidence, and lack thereof, presented at trial, consistent with the standards for assessing a Rule 50 motion, the Court finds that plaintiff has failed to meet his burden on the question of liability. Based on the facts stipulated to by the parties and the evidence presented at trial, defendant was entitled to use deadly force. Defendant first attempted to use a taser to control the situation, but both defendant and the medical examiner, Dr. Lochmuller, testified that the use of the taser was ineffective. When defendant made the decision to use his firearm, the evidence showed that the decedent was engaged in a struggle with defendant. Plaintiff's only argument was that five shots, as compared to a single shot, was excessive.

Even if a jury did not believe defendant's testimony, a reasonable jury could not render a verdict in favor of plaintiff. Based on the video, immediately after the taser was deployed, multiple shots were fired. Only two seconds elapsed between when the first and the fifth shot were fired from a range of one to three feet. Based on this video and audio evidence, a reasonable jury could not find that the initial struggle between the decedent and defendant had ceased and that the decedent had already started to flee. In other words, plaintiff's theory or argument that the decedent was not only unarmed but was attempting to flee at the time he was shot is unsupported by the evidence presented by plaintiff, even when considering that evidence in a light most favorable to plaintiff.

In light of this, plaintiff cannot meet his burden in showing that defendant Gerlach used excessive force when he discharged his weapon and shot the decedent. Thus, the jury could reasonably come to but one conclusion—that is, that defendant Gerlach acted in a

reasonable manner when he discharged his weapon and killed the decedent because he was acting in self-defense in response to a significant threat of violence.

## IV. CONCLUSION

Accordingly, in a separate order filed contemporaneously with this memorandum opinion, the Court will **GRANT** defendant's motion for directed verdict as to the questions of liability and damages.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE
