UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| BRANDON T. CARDEN, individually and as next of kin of the Decedent, Ronald E. Carden, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No.: 3:15-CV-314-TAV-HBG |
| DAVID GERLACH, individually and in his official capacity as an officer of the Knoxville City Police Department, | ) ) ) ) ) | |
| Defendant. | ) | |

# **MEMORANDUM OPINION**

This civil matter is before the Court on defendant's second renewed and supplemental motion for summary judgment [Doc. 114]. Plaintiff did not respond and the time for doing so has now passed. E.D. Tenn. L.R. 7.1. In his motion, defendant asserts that he is entitled to qualified immunity as a matter of law.[1] For the reasons set forth below, the Court will grant defendant's motion for summary judgment.

**I.    Background**

In the early hours of July 27, 2014, Ronald Carden ("the decedent") and Nicholas Thomas ("Mr. Thomas") were traveling on Interstate 40 ("I-40") when the decedent's car experienced a flat tire, and they pulled over to change it [Doc. 1 ¶ 16, Doc. 7 ¶ 16].

---

[1] Defendant also asserts that he is entitled to judgment as a matter of law on the excessive force claim [Doc. 114]. At trial, the Court granted defendant's motion for directed verdict in an oral ruling [Doc. 112]. The Court will issue a separate, written opinion regarding the directed verdict.

Defendant Officer David Gerlach ("defendant"), while on patrol, observed the two men standing on the shoulder of I-40 [Doc. 14-1 ¶ 3]. Defendant pulled behind the vehicle and saw that the men were changing a flat tire [*Id.*]. He offered them assistance, which they declined, and returned to his police cruiser [*Id.* ¶ 4]. After beginning to back out, defendant ran the license plate of the vehicle and realized that the plates did not match the vehicle registration [*Id.*]. Defendant then pulled his cruiser back behind the two men in order to further investigate [*Id.*].

As defendant exited his vehicle, the decedent walked over to his car's driver-side door and leaned down inside the vehicle [*Id.* ¶ 5; Doc. 14-6, D. Gerlach Video].[2] Defendant, fearing that the decedent was reaching for a weapon, asked the decedent to walk toward him [Doc. 14-1 ¶ 5]. The decedent did not appear to have a weapon in his hands as he rose from the car [Doc. 14-6, D. Gerlach Video]. He approached defendant, and defendant placed a hand on the decedent's chest [Doc. 14-1 ¶ 6]. Defendant then called in the traffic stop, holstered his radio, and placed a hand on the decedent's sleeve [*Id.*]. The decedent proceeded to swing two punches at defendant's mid-torso and run in the opposite direction of I-40 [*Id.*; Doc. 14-6, D. Gerlach Video]. Defendant chased after the decedent and ordered that he stop and get down on the ground [Doc. 14-1 ¶¶ 6, 8]. The decedent ignored these commands, and defendant tackled him to the ground [*Id.* ¶ 8; Doc. 14-6, D. Gerlach Video]. A struggle ensued during which the decedent attempted to grab

---

[2] The D. Gerlach video [Doc. 14-6] is footage recorded from defendant's dashboard camera in his police cruiser [Doc. 14-1 ¶ 7]. The Court has reviewed this footage.

defendant's gun [Doc. 103]. Ultimately, defendant fired five shots, killing the decedent [*Id.*].

Brandon Carden, the son of the decedent, now brings suit against the City of Knoxville and defendant, both individually and in his official capacity [Doc. 1]. He asserts claims against defendant pursuant to 42 U.S.C. § 1983 for excessive force, deprivation of liberty without due process of law, summary punishment, arbitrary governmental activity, and deliberate indifference in violation of the Fourth and Fourteenth Amendments [*Id.* at 7, 15]. In addition, plaintiff claims that defendants deprived him of the right of familial association with his father [*Id.* at 7]. Plaintiff also brings claims against defendant for assault, battery, and deliberate indifference under Tennessee law [*Id.* at 12].

This Court previously granted in part and denied in part defendant's initial motion for summary judgment [Doc. 27]. Part of the Court's reasoning for denying summary judgment on defendant's qualified immunity defense was that Mr. Thomas, who was present when defendant shot the decedent, provided statements about his version of events [*Id.*]. Because his version of events conflicted with defendant's version of events, this Court held that a genuine dispute of material fact existed as to whether defendant was authorized to use deadly force, and thus summary judgment was denied. Defendant appealed this Court's decision to the Sixth Circuit, claiming that he was entitled to qualified immunity on plaintiff's excessive force claim as well as his claims under state law for assault, battery, and deliberate indifference. The Sixth Circuit affirmed this Court's decision [Doc. 30]. Defendant then filed a renewed motion for summary judgment on the

same claims [Doc. 44], which this Court denied again on the grounds that Mr. Thomas and defendant had conflicting stories about the incident in question [Doc. 66].

Before trial, plaintiff filed a motion in limine seeking to exclude the testimony and statements of Mr. Thomas [Doc. 85]. Plaintiff asserted that Mr. Thomas's statements were inconsistent and unreliable [*Id.*]. At the final pretrial conference held on April 16, 2018, both parties stipulated that Mr. Thomas's testimony and previous statements would be excluded at trial [Doc. 106]. Defendant stated his intent to file a renewed motion for summary judgment in light of this stipulation, and plaintiff did not object nor did plaintiff attempt to call Mr. Thomas as a witness at trial. In addition, in the agreed upon pretrial order, plaintiff stipulated to certain facts, including the fact that the decedent made efforts to gain control of defendant's handgun [Doc. 103 p. 5]. Based on these developments, defendant filed a second renewed motion for summary judgment [Doc. 114]. While plaintiff did not file a renewed response to the present motion, given the extensive briefing on this issue prior to trial, the Court will consider plaintiff's arguments previously raised in opposition to defendant's motions [Docs. 25, 53].

## II. Standard of Review

Summary judgment is proper where there is "no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The Court may consider the pleadings, discovery, affidavits, and other evidence on the record. *Id.* In the Sixth Circuit, there is a genuine issue of fact "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. W. Reserve*

4

*Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Id.* at 451–52. The Court must view the evidence in the light most favorable to the non-movant, and draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003). Thus, "the moving party has the initial burden of showing the absence of a genuine issue of material fact." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). On a motion for summary judgment by a defendant asserting a sovereign immunity defense, the Court must adopt the plaintiff's version of the facts. *Campbell v. City of Springboro*, 700 F.3d 779, 786 (6th Cir. 2012).

Government officials are shielded from liability under the doctrine of qualified immunity so long as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). Plaintiff must plead facts showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). Qualified immunity is an affirmative defense,[3] and once raised, the plaintiff must show that the official violated a right so clearly established that a "reasonable official would have understood that what he [was] doing violate[d] that right." *Id.* at 741 (internal citation and quotation marks omitted). The plaintiff bears the ultimate burden of proof, *Garretson v. City of Madison Heights*, 407 F.3d 789, 798

---

[3] Defendant pleaded qualified immunity in his answer [Doc. 7 ¶ 70].

(6th Cir. 2005) (citation omitted), and if the plaintiff fails to carry his burden as to either element of the qualified-immunity analysis, then the official is immune from suit, *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012).

**III.    Analysis**

The Court will first examine whether defendant violated the decedent's constitutional right to be free from excessive force. *al-Kidd*, 563 U.S. at 735. While the Fourth Amendment prohibits unreasonable seizures to protect citizens from the use of excessive force by law enforcement officers, *Godawa v. Byrd*, 798 F.3d 457, 463 (6th Cir. 2015), the government does have a "right to use some degree of physical coercion[,] or threat thereof," when carrying out an arrest. *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (quoting *Graham*, 490 U.S. at 396).

In evaluating a claim of excessive force, courts should utilize the Fourth Amendment's "objective reasonableness" standard, whereby a court analyzes whether "the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397, 399. Reasonableness is determined by "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (internal quotation marks and citations omitted).

Three non-exclusive factors should be examined in making this determination: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting

6

to evade arrest by flight ("the *Graham* factors"). *Graham*, 490 U.S. at 396. These factors are evaluated from the perspective of a reasonable officer on the scene, "rather than with the 20/20 vision of hindsight." *Id.* Additionally, these three factors are not an exhaustive list, and a court's ultimate inquiry should be "whether the totality of the circumstances justifies a particular sort of seizure." *Id.* The circumstances should be evaluated at the moment force is employed. *See Bouggess v. Mattingly*, 482 F.3d 886, 889 (6th Cir. 2007) (stating that the reasonableness of the use of force at a particular time is based on an "objective assessment of the danger a suspect poses at that moment").

Courts should account for "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397. "[T]he fact that a situation unfolds relatively quickly," however, "does not, by itself, permit [officers] to use deadly force." *Estate of Kirby v. Duva*, 530 F.3d 475, 483 (6th Cir. 2008) (quoting *Smith v. Cupp*, 430 F.3d 766, 775 (6th Cir. 2005)).

"Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Garner*, 471 U.S. at 11; *see Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005) (asserting that deadly force "may be used only if the officer has probable cause to believe that the suspect poses a threat of severe physical harm"). "Given the extreme intrusion caused by use of deadly force," however, "the countervailing governmental interests must be weighty indeed." *Rivers v. Bowers*, No. 2:06-CV-712, 2008 WL 2079406, at *6 (S.D. Ohio July 8, 2010). Thus, deadly force, in particular, may only be

7

used by officers "in rare instances." *Whitlow v. City of Louisville*, 39 F. App'x 297, 302–03 (6th Cir. 2002). "The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable." *Garner*, 471 U.S. at 11. "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Id.*

In evaluating a defendant officer's motion for summary judgment, "the court may not simply accept what may be a self-serving account by the police officer. It must look at the circumstantial evidence that, if believed, would tend to discredit the police officer's story." *Jefferson v. Lewis*, 594 F.3d 454, 462 (6th Cir. 2010) (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)).

In this case, however, the parties stipulated to several facts that resolve the question of qualified immunity in favor of defendant. First, the parties agree that the decedent struck defendant in the mid torso [Doc. 103 p. 4]. Second, the parties agree that the decedent continued to try to obtain defendant's service handgun despite multiple deployments of a taser [*Id.* p. 5]. Finally, the parties agree that Mr. Thomas's statements are unreliable and that he could not be called as a witness during trial [Docs. 85, 106]. Thus, while defendant's statements may be "a self-serving account," *see Jefferson*, 594 F.3d at 462, it is the only account available on the record. Plaintiff has provided no other account of what happened, and he has stipulated to several key facts that support defendant's version of events.

The Court already determined that the *Graham* factors weighed in favor of defendant using some force against the decedent [Doc. 27 pp. 15–16]. In the Court's analysis of whether the use of deadly force was necessary, the Court relied on Mr. Thomas's statements to law

enforcement officers to determine that a reasonable factfinder could find that "neither defendant nor anyone else was in danger when defendant shot six rounds at the decedent" [*Id.* p. 18]. Together with the autopsy report, Mr. Thomas's statements painted a picture of the decedent fleeing unarmed when defendant shot him.

In the time between the Court's summary judgment opinion and the trial, the record changed significantly. While Mr. Thomas's statements and the autopsy report together corroborated plaintiff's theory of the case, without Mr. Thomas's statements, and after the addition of the facts stipulated to by the parties, no reasonable factfinder could find that defendant's actions were unreasonable.

Based on the undisputed facts, the decedent attacked the officer and then persisted in his plight to seize defendant's weapon. An officer need not wait "to see whether a mortal threat dissipates" when faced with "rapidly changing circumstances," although he must still have objective reason to believe that the suspect poses a serious physical threat at that moment in order to use deadly force. *Williams*, 496 F.3d at 486; *Guerra Morales v. United States*, 416 F.3d 458, 463 (6th Cir. 2005). Furthermore, an officer may also use deadly force if it was reasonable for him to believe, under the circumstances, that an individual had retrieved a gun, even if the individual was in reality unarmed. *See Leong v. City of Detroit*, 151 F. Supp. 2d 858, 866 (E.D. Mich. 2001) (citing *Reese v. Anderson*, 926 F.2d 494 (5th Cir. 1991)). Here, the parties do not dispute the fact that the decedent attacked the officer and was attempting to grab defendant's gun, and even though the decedent was unarmed when he was shot, faced with the rapidly changing circumstances, the officer was entitled to use deadly force.

9

Accordingly, the Court finds that defendant did not violate the decedent's constitutional rights and was entitled to use deadly force when faced with the threat of serious bodily harm.[4]

IV. **Conclusion**

Accordingly, in a separate order filed contemporaneously with this memorandum opinion, the Court will **GRANT** defendants' second renewed motion for summary judgment [Doc. 114].

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] Because the Court finds that no right was violated, the Court need not reach the question of whether the right was clearly established. *See al-Kidd*, 563 U.S. at 735.